UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Les Stanford Cadillac, Inc.,

       Plaintiff,

v.                                                     Case No. 12-CV-15630
                                                    Honorable Denise Page Hood

The Cincinnati Insurance Company,

       Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      Before the Court is Defendant Cincinnati Insurance Company's Motion for Summary Judgment **[Docket No. 15, filed February 26, 2014]**. Plaintiff filed a Response to this Motion on March 19, 2014 **[Docket No. 18]**. In this Motion, Defendant argues that Plaintiff is not covered by the insurance policies Defendant issued to Gator Construction & Design, LLC ("Gator"), and therefore, Plaintiff's Complaint should be dismissed. Defendant also seeks an order for costs and fees from Plaintiff. The Court **DENIES** Defendant's Motion for Summary Judgment **[Docket No. 15, filed February 26, 2014]** for reasons set forth below.

### I. BACKGROUND

      In August, 2006, Plaintiff entered into a contract with Gator to install porcelain tiles on the exterior of two of Plaintiff's buildings, located in Dearborn, Michigan. Gator subcontracted to Architectural Southwest Stone Company, LLC

("Architectural").  When the work was complete, Gator delivered two Certificates of Substantial Completion to Plaintiff.  The first certificate states the work was substantially complete on December 30, 2006, and the second certificate indicates the punchlist work was completed on April 2, 2007.  Plaintiff later observed several defects with the work, including that the tiles "were beginning to come loose, were buckling, and/or were falling off the walls" (Comp., ¶8).  The manufacturer of the adhesive used to install the tile, H.B. Filler Construction Products ("Fuller"), determined that the cause of the defects was improper adhesive techniques and installation (Comp., ¶10).

Upon discovering the damage, Plaintiff asked Gator and Architectural to correct the damage.  Neither parties responded.  In October, 2012, Plaintiff sought compensation from Defendant, but Defendant refused.  Gator was covered by insurance policies issued by Defendant, including Commercial General Liability Policy #CPP0734013, and Commercial Umbrella Liability Policy #CCC4488204.  Both policies had effective dates from May 1, 2004, to May 1, 2007.  Plaintiff was an additional insured under the commercial general liability policy.  Plaintiff notified Defendant of the loss due to the defects, but Defendant's claims adjuster indicated they would likely be denied coverage.  Defendant did not communicate with Plaintiff until after the Complaint was filed.

On December 21, 2012, Plaintiff Les Stanford Cadillac, Inc., filed a Complaint seeking declaratory judgment declaring the Plaintiff be afforded coverage under the insurance policies, and to hold Defendant liable for damages arising out of its breach of the insurance policies' terms.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of demonstrating that summary judgment is appropriate. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). The Court must consider the admissible evidence in the light most favorable to the nonmoving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (emphasis added). To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. Any dispute as to a material fact must be established

3

by affidavits or other documentary evidence. Fed. R. Civ. P. 56(c). "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

"In a contract diversity action such as this, Michigan conflict of law rules require the application of the law of the place where the insurance policies were issued and countersigned." *Insurance Co. of North America v. Forty-Eight Insulations, Inc.*, 451 F. Supp. 1230, 1237 (E. D. Mich. 1978). In Michigan, insurance contracts are to be liberally construed in favor of the insured and against the insurer. *Forty-Eight Insulations,* 451 F. Supp. at 1237 (citing *J.L. Simmons Co. v. Fidelity and Casualty Co.*, 511 F.2d 87 (6th Cir. 1975)).

A court's analysis of coverage under an insurance policy must be grounded in the policy language. *Gelman Sciences, Inc. v. Fidelity and Casualty Co. of New York*, 456 Mich. 305, 316 (1998), *overruled on other grounds by Wilkie v. Auto-*

*Owners Ins. Co.,* 469 Mich. 41 (2003). Where the policy language is clear and unambiguous, a court must enforce the terms as written and not rewrite the plain contract language. *Id.* at 317. Ambiguous provisions are construed in favor of the policyholder and in favor of coverage. *Id.* The insured bears the burden of proving coverage, while the insurer must prove that an exclusion to coverage is applicable. *Heniser v. Frankenmuth Mut. Ins. Co.,* 449 Mich. 155, 161 n. 6 (1995); *Arco Industries Corp. v. American Motorists, Ins. Co.,* 440 Mich. 395, 424-25 (1995)(concurrence). Courts are to construe exclusionary clauses strictly in favor of the insured. *Auto-Owners Ins Co v. Churchman,* 440 Mich. 560, 567 (1992). However, coverage under a policy will be lost if an exclusion applies to particular claims of the insured. *Id.* "Clear and specific exclusions must be given effect." *Id.* An insurance company should not be held liable for a risk that it did not assume. *Allstate Ins Co v. Fick,* 226 Mich. App 197, 201 (1997).

**III.   ANALYIS**

In its Motion for Summary Judgment, Defendant argues that under the plain and unambiguous terms of the insurance policies, Plaintiff is not entitled to coverage, because the defects took place in 2012, not during the May 1, 2004, to May 1, 2007, coverage period under the terms of the policies. Defendant also argues that the defects do not amount to an "occurrence" or "property damage" as defined by the policies, and therefore, Plaintiff is not covered by the policy.

Lastly, Defendant argues that Plaintiff is excluded from coverage under the commercial general liability insurance policy, because Plaintiff is an "Additional Insured." Defendant seeks dismissal, and an order for costs and fees from Plaintiff.

In its Response, Plaintiff argues that the property was damaged from the time the tiles were installed in 2006 and 2007, which was during the insurance coverage period. Plaintiff claims it was not aware of the defective work until the tiles began to visibly buckle and crack.

The Commercial General Liability Policy #CPP0734013 ("CGL Policy") states that the "insurance applies to 'bodily injury' and 'property damage' only if… the 'bodily injury' or 'property damage' occurs during the policy period" (Def.'s Mot. for Summ. J., Ex. 5, CGL Policy at p. 1, § I(A)(1)(b)(2)). Similarly, Commercial Umbrella Liability Policy #CCC4488204 ("Umbrella Policy") states the insurance applies only if the "'property damage' occurs during the policy period shown in the Declarations (Def.'s Mot. for Summ. J., Ex. 6, Umbrella Policy at p. 3, § I, A (2)(b)).

The terms of the CGL unambiguously provide coverage for property damage that occurs during the policy period, which was May 1, 2004, to May 1, 2007. Defendant claims the defects occurred in 2012, when Plaintiff first observed the defects. Plaintiff has provided a report from a Certified Special Inspector, Rochelle C. Jaffe, indicating that the defects existed from the time of installation

6

(Pl.'s Resp. to Mot. for Summ. J., Ex. 6, "Jaffe Report"), and a report from Fuller, the manufacturer of the adhesive used to install the tile, indicating that the cause of the defects was improper adhesive techniques and installation (Pl.'s Resp. to Mot. for Summ. J., Ex. 7, "Fuller Report"). Based on the information Plaintiff has provided, whether the damage occurred during the policy period is a genuine issue of material fact.

Defendant argues that the definition of "occurrence" does not include damages involving the actual work an entity was contracted to perform, and that there is no distinction between Gator and the subcontractor, Architectural. The CGL defines occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" (CGL Policy at p. 18, § V (16)). The CGL "Exclusions" section states that the policy does not apply to damage to the named insured's work, but then states "this exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor" (CGL Policy at p. 5, § I(A)(2)(l)). Since Defendant claims that there is no distinction between Gator and Architectural as a subcontractor in defining an "occurrence," this exclusion to the exclusion creates ambiguity by arguably providing coverage when the damage arises out of a subcontractor's work even though Defendant claims that damage arising out of the work an entity was contracted to do is outside the policy's

7

coverage. This ambiguity in the policy terms pertaining to the definition of "occurrence" is also a genuine issue of material fact.

Defendant also argues that the loosening, buckling, and/or falling of the tiles does not amount to "property damage" as defined by the policies. The CGL states:

> 20. "Property damage" means:
>
> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(CGL Policy at p. 20, § V, "Definitions"). Considering the evidence in the light most favorable to the nonmoving party, Plaintiff, a genuine issue of material fact exists as to whether there was property damage or not. Plaintiff has provided documentation to support that there was physical injury to its showrooms as the tiles rendered the building hazardous and made the process of correcting the defective work unsafe as tiles fell during the removal process (*See* "Jaffe Report" at p.9).

Lastly, Defendant argues that Plaintiff is not covered by the CGL, because Plaintiff was an "additional insured," not a third party. The CGL, however, states that "this insurance applies… as if each Named Insured were the only Named

8

Insured" (CGL Policy at p. 15, § IV (8)).  When viewing Gator as the only Named Insured under the CGL, Plaintiff is entitled to seek coverage for property damage caused by Gator.  Plaintiff is not seeking coverage for property damage it caused itself.  It is seeking coverage for property damage caused by Gator, which was covered by the CGL.

Reviewing the record in this case and viewing the facts in the light most favorable to the Plaintiff, Defendant is not entitled to summary judgment for the reasons stated above.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment **[Docket No. 15, filed February 26, 2014]** is **DENIED**.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  March 30, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 30, 2015, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager

9